DICKS PRESS GUARD MFG. CO. et al. v. AMERICAN HARDWARE CORP.

(Circuit Court of Appeals, Second Circuit.   November 13, 1917.)

No. 33.

PATENTS ⊜⟿328—VALIDITY AND INFRINGEMENT—SAFETY ATTACHMENT FOR
    PRESSES.
        The Dicks patent, No. 618,065, for a safety attachment ·for power
    presses, as limited, if not wholly anticipated by the Oppler German pat-
    ent, No. 58,289 of 1890, *held* not infringed.

Appeal from the District Court of the United States for the District
of Connecticut.

Suit in equity by the Dicks Press Guard Manufacturing Company
and others against the American Hardware Corporation.  Decree for
defendant, and complainants appeal.  Affirmed.

Albert F. Nathan, of. New York City, for appellants.
John P. Bartlett, of New York City, for appellee. ˙

Before WARD and HOUGH, Circuit Judges, and LEARNED
HAND, District Judge.

HOUGH, Circuit· Judge.  This patent (now expired) was before us
in Dicks, etc., Co. v. Bowen, 229 Fed. 573, 143 C. C. A. 611.  The de-
scription of the mechanism shown by the patentee as embodying his
claims, there made by Lacombe, J., renders any further statement of
the kind superfluous, and claim 1 is printed on page 574.

The other claim now in suit (3) needs no separate or special treat-
ment; it merely states the combination of the first claim in greater de-
tail, and with some subdivision of elements.  The new questions here
raised are not only whether the device of the defendant herein in-
fringes, but the more fundamental inquiry, whether the first (and more
general) claim of the patent is entitled to a range of equivalents broad
enough to reach defendant, or is, indeed, valid at all, in the light of
prior art now for the first time in evidence.  In the case cited, it was
said that:

"No such prior art [was] shown as would require a strained construction to
be given the claim in order to save it."

We have now before us German patents to Oppler, Nos. 55,311 and
58,289 (1890), and to. Hirschmann, No. 64,711 (1892).  The earlier
Oppler patent and that to Hirschmann display, the latter a positive
stoppage or prevention of plunger descent by plugs or bolts which the
workman must manually release before starting his machine, and the
former an inclosure or delimitation of the working area under and
around the plunger by a gate or gates which the workman's hands
must (in order to put the subject of work even near the die) advance
or open against spring tension, until what is called a "support" is so
placed as to prevent the descent of the plunger far enough to injure
the hand not timely retracted, while hands· quickly withdrawn let the

⊜⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

gates and "supports" swing back to normal and out of the plunger's path.

Whether these disclosures did not so limit the field of invention open to this patentee as to justify defendant's contention that it follows the prior art is a question that need not be considered, because we hold the second Oppler patent (58,289) conclusive against plaintiff. In this second application the German inventor shows the gates of his first patent, but dispenses with the integrally connected "supports" which positively halted the plunger, when the gates were opened to give access to the working area; instead thereof he shows a treadle, which by simple mechanism closes the gates, sweeping before them the workman's hands. The same treadle, when sufficiently depressed, reaches and moves the lever that starts the plunger mechanism; but such contact cannot be made unless the downward motion of the treadle has completed closure of gates. Hands or other obstructions of gates stop treadle movement.

We do not overlook the fact that Oppler's drawings are imperfect; they show his gates swinging the wrong way. The mistake is one any mechanic could correct, and does not affect the extent of his disclosure to the skilled man. Here is every essential element of the claims in suit: The plunger; the detector independent thereof, moving before the plunger begins its own effective movement; and a stop mechanism controlled by the detector, preventing the effective movement of the plunger whenever the normal detector movement does not take place— i. e., whenever the detector detects anything in its path that does not get out of the way.

But two differences can be pointed out: Oppler's detector does not "move toward the die," and it is horizontal, not perpendicular, in movement; that is to say, Oppler never starts his plunger if his detector fails to brush away offending hands, while this patentee does not start his plunger if his detector finds hands or the like under it. Such differences are not substantial; and it cannot be doubted that, broadly or literally read, the first claim in suit covers Oppler's second device; therefore, so read, it was anticipated by Oppler.

The plaintiff's position is fairly stated by its expert witness, who said that:

The "principal difference between the Oppler machine and that of the patent was that the safety device [of Oppler] was positively moved by the treadle, but there was nothing *in the machine* preventing the application of the shop power to the punch; there was no interference with the starting of the punch by the sweeps" (i. e., gates).

That nothing *in the machine* prevented Oppler's plunger or punch from descending is true; but it is equally true that the lever releasing the plunger could not operate, unless and until the normal movement of the safety device was completed. This is a control or prevention of the "effective movement of punch" by substantially the same means as those of the patent in suit. Further, the word "machine" should be taken to apply to the whole apparatus, not merely the punching mechanism. Whether, with that more restricted interpretation mentioned by Lacombe, J., the claim can be "saved," need not be considered, since

the patent has expired. So far as this defendant is concerned, it is enough to say that nothing but the broadest range of equivalents can find infringement.

As that cannot be accorded, the decree below is affirmed, with costs.